**State of WISCONSIN, Plaintiff,**

v.

**HO–CHUNK NATION, Defendant.**

No. 05–C–632–S.

United States District Court,
W.D. Wisconsin.

Dec. 8, 2005.

Matthew J. Flynn, Cristina D. Hernandez–Malaby, Milwaukee, WI, for Plaintiff.

Lester J. Marston, Scott L. Johnson, Rapport & Marston, Ukiah, CA, Thomas M. Pyper, Whyte Hirschboeck Dudek S.C., Madison, WI, for Defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff commenced this action for the appointment of an arbitrator pursuant to provisions of the gaming compact between the parties and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 5, and has moved for an immediate appointment. Defendant has moved to dismiss the case for lack of jurisdiction and, alternatively, for failure to state a claim because the FAA does not extend to contracts between the state and the tribe and there has not been a "lapse" in the appointment of the arbitrator. The following is a summary of the allegations of the complaint and the undisputed facts relevant to the pending motions.

## FACTS

In 1992 the two parties entered into a gaming compact enabling defendant to conduct class III games within the meaning of the Indian Gaming Regulatory Act ("IGRA"). The compact was amended in 2003 to permit new class III games, to make the term of the compact indefinite and to increase the payments from defendant to plaintiff. The 2003 amendment also included an agreement to arbitrate disputes and a process for appointing an arbitrator.

On May 13, 2004 the Wisconsin Supreme Court issued its decision in *Panzer v. Doyle*, 2004 WI 52, 271 Wis.2d 295, 680 N.W.2d 666, which held a similar compact amendment between Wisconsin and a tribe to be invalid as exceeding the governor's authority under the Wisconsin Constitution and unlawfully authorizing games precluded by the Wisconsin Constitution. Among the issues considered by the *Panzer* court was whether IGRA required negotiation for the types of class III games authorized by the 2003 amendment.

Following the *Panzer* decision defendant ceased conducting the additional class III games authorized by the amendment and any payments to plaintiff. The parties have engaged in additional unsuccessful negotiations concerning further compact amendments. On June 16, 2005 defendant filed an arbitration complaint pursuant to the terms of the 2003 amendment seeking damages from the defendant's voiding the additional class III game provisions. Plaintiff counterclaimed in arbitration for recovery of the payments not made.

Pursuant to the arbitration procedure provided in the 2003 amendment both parties proposed arbitrators and each struck all arbitrators proposed by the other. On August 11, 2005 the parties mutually agreed to withdraw their strikes of the opponent's proposed arbitrators and attempt to agree on a neutral arbitrator from the lists proposed. On August 12, 2005 the parties agreed that they could not agree on an arbitrator. Defendant appointed George Foreman and plaintiff appointed John Walsh as the arbitrators who would select the final arbitrator. Foreman and Walsh spoke several times but reached no agreement. On October 27th,

2005 Foreman sent Walsh a letter proposing that they continue their efforts to agree on an arbitrator until November 15, 2005, after which they could jointly petition the Court to appoint one. On October 28, 2005 this action was filed and no further discussions of record were had between Walsh and Foreman.

### MEMORANDUM

Defendant first contends that the Court lacks subject matter jurisdiction because the underlying contract dispute does not arise under federal law within the meaning of 28 U.S.C. § 1331. Second, defendant argues that the FAA is inapplicable because the gaming compact does not "involve commerce" within the meaning of 9 U.S.C. § 2. Finally, the parties dispute whether there has been a "lapse" in the naming of an arbitrator within the meaning of 9 U.S.C. § 5 which would trigger the Court's authority to appoint an arbitrator. Plaintiff opposes the motion to dismiss, contends that a lapse has occurred as a matter of law and seeks appointment of an arbitrator. Each party has submitted qualifications and information concerning the proposed arbitrators who are apparently willing to serve.

*Subject Matter Jurisdiction*

■ The FAA does not confer subject matter jurisdiction. *America's Money-Line, Inc. v. Coleman,* 360 F.3d 782, 784–5 (7th Cir.2004). Jurisdiction exists if the federal court would have original jurisdiction over the underlying dispute. *Id.* at 785; 9 U.S.C. § 4. "[I]f the Court would exercise jurisdiction over the dispute in the absence of the arbitration clause, the statute now gives it the authority, and the obligation, to enforce the arbitration clause." *Coleman,* 360 F.3d at 785. *Coleman* expressly rejects the contention, presently advanced by defendant, that the focus should be on the claim for arbitration itself rather than the underlying dispute as revealed in the complaint. *Id.* at 786–87.

■ The relevant jurisdictional issue is whether the Court has original jurisdiction pursuant to 28 U.S.C. § 1331 of a dispute between these parties over the enforceability of the compact or the obligations of the parties in the absence of an enforceable compact amendment. It does:

> We agree that Congress, in passing IGRA, did not create a mechanism whereby states can make empty promises to Indian tribes during good faith negotiations of Tribal–State compacts, knowing that they can repudiate them with immunity whenever it serves their purpose. IGRA necessarily confers jurisdiction onto federal courts to enforce Tribal–State compacts and the agreements contained therein.

*Cabazon Band of Mission Indians v. Wilson,* 124 F.3d 1050, 1056 (9th Cir.1997). This district has previously reached the same conclusion. *Forest County Potawatomi Community of Wisconsin v. Doyle,* 828 F.Supp. 1401, 1412 (W.D.Wis.1993):

> [The claim] derives from the fact that the machines are being operated in conformance with a tribal-state compact entered into pursuant to 25 U.S.C. § 2710(d)(3). Without [IGRA], states would not be required to bargain in good faith to create compacts and Class III gaming would be illegal. Therefore, I conclude that the controversy alleged in the complaint arises under Federal law and this court has subject matter jurisdiction.

This Court has original jurisdiction over the underlying dispute which is the subject of arbitration and accordingly has jurisdiction to compel arbitration pursuant to the FAA.

*FAA "Involving Commerce" Requirement*

■ 9 U.S.C. § 2 limits the application of the FAA to a written provision in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 1 defines "commerce" as "commerce among the several states or with foreign nations..." Defendant constructs an elaborate argument that a contract between a tribe and a state does not arise under either the Interstate or Indian Commerce Clauses of the Constitution and therefore is not commerce within the meaning of the FAA. Assuming defendant is correct that the state-tribal compact itself is technically not "commerce" in the Constitutional sense, that fact is irrelevant. The Supreme Court has held that the phrase "involving commerce" as used in the Act is intended to broadly cover contracts that "affect commerce" *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). The question is not whether the compact itself is interstate commerce, but whether the compact in fact affects commerce. *Id.* at 281–82, 115 S.Ct. 834. The compact significantly affects interstate commerce both in terms of equipment and service vendors and the attraction of interstate gaming customers. Accordingly, the FAA applies to permit enforcement of the parties agreement to arbitrate.

*Existence of a "Lapse" in Naming an Arbitrator*

9 U.S.C. § 5 provides:

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; ... but if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator ..., then upon the application of either party to the controversy the court shall designate and appoint an arbitrator ....

These parties have followed the method provided in their agreement for the appointment of an arbitrator, but have failed to appoint an arbitrator in the five and one half months since the arbitration complaint was filed. The parties dispute whether the circumstances surrounding their attempt to name an arbitrator constitute a lapse within the meaning of § 5.

The term "lapse" as used in § 5 refers to the passage of time regardless of the intent of the parties. *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 814 F.2d 1324, 1327 (9th Cir.1987). This meaning is made apparent by the immediately preceding phrase which makes failure of the parties to use the process an express basis for appointment of an arbitrator. Thus, "for any other reason there is a lapse," means that even though the parties have availed themselves of the prescribed method, they have been unsuccessful in appointing an arbitrator for some period of time. The issue is whether the delay in this case has been long enough to constitute a lapse. In *Pacific*, the court found that five months was ample time to provide an opportunity to comply with the appointment provisions. *Id.* 1329.

■ It has been nearly four months since the parties appointed their two arbitrators to choose an arbitrator and nearly six months since the arbitration process was initiated. The arbitration agreement contemplates that the arbitration process itself should be completed within 180 days. At this point the process to choose an arbitrator has nearly exceeded the period for conducting the arbitration itself. Furthermore, there is no end in sight. In fact, even defendant's arbitrator suggested that November 15 should be the end date of the

attempted selection process. Clearly, a delay in the process of nearly six months constitutes a lapse triggering the Court's authority to appoint an arbitrator under 9 U.S.C. § 5.

Defendant suggests that the Court should focus on the behavior of the parties and their continuing good faith efforts to appoint an arbitrator. It also suggests that the parties were somehow precluded from proceeding with the selection process by the filing of this action. The second of these arguments is false and the first is irrelevant. One obvious purpose of the lapse provision is to assure that arbitration remains an expeditious and efficient way to resolve disputes. The parties agreement that arbitration should take no longer than 180 days evidences that this was one of their purposes in agreeing to arbitrate. Regardless of explanations or representations about renewed motivation to accomplish the task, at some point enough time has elapsed where the Court is authorized and obligated by § 5 to appoint the arbitrator so that the merits of the dispute can be addressed. That point has certainly been reached here.

*Appointment of an Arbitrator*

Each party has identified five potential arbitrators and has provided information as to their qualifications. Some of the proposed arbitrators have been deposed and their depositions or excerpts of those depositions have been provided. The Court has reviewed these materials. The arbitration agreement includes requirements for qualification that the appointed arbitrator "not possess a conflict of interest" or be "biased in favor of either party" and that he or she "shall have experience in gaming and federal Indian law."

Having reviewed all of the submissions the Court now appoints the Honorable William A. Norris to arbitrate the dispute. The evidence of record establishes that he has no conflict of interest or bias and that he has considerable and meaningful experience in both gaming and Indian law. Furthermore he has a history of successful dispute resolution experience. Pursuant to 9 U.S.C. § 5, he shall act under the agreement with the same force and effect as if he had been appointed by the parties.

### ORDER

IT IS ORDERED that defendant's motion to dismiss or alternatively for summary judgment is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for the appointment of an arbitrator is GRANTED.

IT IS FURTHER ORDERED that the Honorable William A. Norris is hereby appointed pursuant to 9 U.S.C. § 5 to arbitrate the dispute between the parties.

IT IS FURTHER ORDERED that this matter be dismissed without prejudice, subject to immediate reopening upon motion of either party where all issues have not been resolved by arbitration.